UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00060-TBR

KENNETH WATTS                                                                    Plaintiff

v.

LYON COUNTY AMBULANCE SERVICE, *et al.*                         Defendants

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendants Lyon County Fiscal Court[1] (Fiscal Court) and Lyon County Ambulance Service's[2] (Ambulance Service) (collectively "Defendants") Motions to Dismiss.  (Docket Nos. 20 & 21, respectively.) The Defendants previously filed motions to dismiss, (Docket Nos. 5; 9), which the Court denied with leave to refile after allowing Plaintiff Kenneth Watts to file his Amended Complaint.  (Docket Nos. 18; 19.)  The Fiscal Court filed "Responses," (Docket Nos. 10; 25), to the Ambulance Service's original and refiled Motions to Dismiss, (Docket Nos. 5; 21), which are not actually responses, but merely the Fiscal Court's joining in the Ambulance Service's arguments for dismissal.  Watts responded to the Ambulance Service's original and refiled Motions to Dismiss, (Docket Nos. 6;

---

[1] The Lyon County Fiscal Court Defendant also includes Lyon County Judge Executive Wade White and Lyon County Magistrates Charles Ferguson, Buddy L. Nichols, and Steve Cruce, each in their individual and official capacities as members of the Lyon County Fiscal Court.  For simplicity's sake, the Court will refer to these Defendants collectively as the "Fiscal Court."

[2] The Lyon County Ambulance Service Defendant also includes Rod Murphy, Anthony Young, Steve Gilland, and Lilburn Ann Denney, each in their individual and official capacities as members of the Lyon County Ambulance Service Board.  Again, for simplicity's sake, the Court will refer to these Defendants collectively as the "Ambulance Service."

22), and the Ambulance Service replied to Watts' original Response, (Docket No. 11). Watts also filed a "Reply," (Docket No. 12), to the Fiscal Court's erroneously styled "Response," (Docket No. 10), which was itself actually a response to the Fiscal Court's adoption of the Ambulance Service's arguments; however, Watts has not replied directly to either the Fiscal Court's original or refiled Motions to Dismiss, (Docket Nos. 9; 20), and the time to do so has now passed.   Needless to say, this matter is now fully briefed and ripe for adjudication.

## BACKGROUND

This litigation arises from the termination of Watts' employment with the Ambulance Service.[3]   Watts alleges that on September 9, 2009, he entered into an employment contract with the Ambulance Service to serve as its director.  (Docket No. 19, ¶ 10.)  He alleges this contract was approved by the Fiscal Court.  (Docket No. 19, ¶ 10.)  During his employment, Watts states he was instructed by Rod Murphy, chairman of the Ambulance Service Board, and other Board members to fraudulently charge Medicare and Medicaid excessive rates for ambulance services.  (Docket No. 19, ¶ 11.) Watts says he refused to submit these charges, and, as a result, the Fiscal Court and Ambulance Service "became angry" with him.  (Docket No. 19, ¶ 12-13.)  Because Defendants "were displeased with [his] refusal to submit fraudulent charges," Murphy conspired, either "alone[4] or in concert with one or more of the other defendants," to induce former Ambulance Service employees Sara Maki and Sara Mink-Taylor to levee

---

[3] For purposes of this discussion, the Court will construe all facts in the light most favorable to Watts, accept the allegations in his Amended Complaint as true, and draw all reasonable inferences in his favor. *See Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008).

[4] A conspiracy, of course, requires at least two conspirators.  *See* Black's Law Dictionary 350 (9th ed. 2009); *see also* 18 U.S.C. § 371.

false sexual harassment claims against Watts in exchange for reemployment with the Ambulance Service.  (Docket No. 19, ¶ 14-17.)  Maki refused and was not reemployed, but Mink-Taylor agreed to make false statements accusing Watts of sexual harassment and was.  (Docket No. 19, ¶ 18.)  After Mink-Taylor's false accusations, the Ambulance Service Board met on May 9, May 19, and June 9, 2011, to discuss Watts' termination.  (Docket No. 19, ¶ 19.)  Watts' employment was terminated on June 2, 2011.[5]  (Docket No. 19, ¶ 20.)

Watts also alleges that on or about May 9, 2011, Ambulance Service Board member Lilburn Ann Denney received a fax containing protected health information concerning patients[6] of the Ambulance Service on a fax machine accessible to the public.  (Docket No. 19, ¶ 21.)  According to Watts, this patient record was produced and discussed during the May 9 meeting's open session without that patient's authorization.  (Docket No. 19, ¶ 21.)

Finally, Watts claims that after his termination, members of the Fiscal Court and Ambulance Service published false statements about him "by telling other members of the community of the reasons for his termination"—reasons which he claims "were materially false and damaged [his] reputation and standing in the community."  (Docket No. 19, ¶ 23.)

Watts' Amended Complaint sets forth eight claims on which he seeks relief:

---

[5] Despite stating that the Ambulance Service board met on June 9 to discuss "whether to terminate Kenneth Watts' employment," Watts pleads he "was terminated on June 2."  (*Compare* Docket No. 19, ¶ 19, *with* ¶ 20.)

[6] It is unclear from his Amended Complaint whether Watts refers to a single patient record or multiple patient records, and Watts does not identify this record further.  (*See* Docket No. 19, ¶¶ 21, 66.)

Count 1:   sex discrimination and/or creation of a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

Count 2:   unlawful discharge in violation of the False Claims Act, 31 U.S.C. § 3730;

Count 3:   sex discrimination and/or creation of a hostile work environment in violation of the Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.010 *et seq.*;

Count 4:   breach of contract;

Count 5:   slander;

Count 6:   civil conspiracy;

Count 7:   tortious interference with a contract;

Count 8:   unlawful discharge in violation of 45 C.F.R. § 160.316.

(Docket No. 19, at 5-12.)

## JURISDICTION

United States District Courts have "federal question" jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  In addition to federal question jurisdiction, district courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  § 1367(a). Thus, a district court is granted jurisdiction to hear causes of action arising under state law so long as those claims "form part of the same case or controversy" giving rise to the court's federal question jurisdiction.

Although district courts are granted supplemental jurisdiction under § 1367(a), they may, in their discretion, decline to exercise that jurisdiction for the reasons listed in § 1367(c).  Specifically, a district court may decline jurisdiction over a supplemental

state law claim where the court "has dismissed all claims over which it has original jurisdiction." § 1367(c)(3). The Sixth Circuit instructs that "generally, 'if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.'" *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (quoting *Taylor v. First of Am. Bank–Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992)). When deciding whether to decline jurisdiction under § 1367(c)(3), a district court must weigh several factors and "should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Id.* (citing *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991)). If a district court declines jurisdiction over a supplemental state law claim, it must dismiss the case if it was originally brought as a federal action or otherwise remand to the state court from which it was removed.

## STANDARD

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint may be attacked for failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court will presume that all the factual allegations in the complaint are true and will draw all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th

Cir. 1987)).  Additionally, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto . . . and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (citations omitted).  A complaint should contain enough facts "to state a claim to relief that is plausible on its face."  *Id.* at 570.  A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged— but has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.*

DISCUSSION

## I.        Claims Against the Fiscal Court Defendants

The Fiscal Court moves for dismissal of Watts' claims against it because the Fiscal Court and its members did not employ Watts, had no authority to terminate Watts, and took no adverse action against Watts relative to his employment.  (*See* Docket No. 9-1; 20.)   In support of its Motion, the Fiscal Court attaches the affidavits of Lyon County Judge Executive Wade White, Lyon County Clerk Sarah Defew, and Lyon County Treasurer Denise Sutton, as well as Fiscal Court minutes from its regular meetings on February 9 and March 11, 2010, and Ambulance Service Board minutes from the February 11, 2010, meeting during which Watts was hired.  (*See* Docket Nos. 9-2 to -7.)   Because the Fiscal Court references significant material outside the pleadings, which does more than merely "fill[] in the contours and details of the plaintiff's complaint," the Court will address the Fiscal Court's Motion to Dismiss as a motion for summary judgment.   *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).   Watts has not responded directly to either the Fiscal Court's original or refiled Motion to Dismiss, and has not, despite the Fiscal Court's reliance on significant material outside the pleadings, requested additional time or discovery before responding to the Fiscal Court's Motion as a motion for summary judgment.

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving

party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material

fact."  *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is

whether the party bearing the burden of proof has presented a jury question as to each

element in the case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff

must present more than a mere scintilla of evidence in support of his position; he must

present evidence on which the trier of fact could reasonably find for him.  *See id.* (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Mere speculation will not

suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable

factual dispute will not defeat a properly supported motion for summary judgment.  A

genuine dispute between the parties on an issue of material fact must exist to render

summary judgment inappropriate."  *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173,

1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition

Corp.*, 681 F.3d 312 (6th Cir. 2012).

    Even drawing all reasonable inferences and construing the facts in a light most

favorable to Watts, the Court finds no genuine factual dispute whether Watts is entitled

to relief against the Fiscal Court.  Watts alleges no substantive allegations against the

Fiscal Court that the Fiscal Court violated his constitutional rights or took any adverse

action against him.  Instead, Watts merely alleges that Judge Executive White is an *ex

officio* member of the Ambulance Service Board and was present in a meeting when

Watts' termination was discussed, and that the Fiscal Court approved Watts' contract of

employment.  (*See* Docket No. 19, ¶¶ 5, 10.)  The Fiscal Court has offered sworn

testimony by Judge Executive White and County Clerk Defew that neither the Fiscal

Court nor its members exercise any power, oversight, or control over the Ambulance Service, including, but not limited to, the hiring, firing, and other employment-related functions of Ambulance Service employees.  (Docket Nos. 9-2, ¶¶ 3-5; 9-3, ¶ 4.)  Judge Executive White further avers that no member of the Fiscal Court has voting power on the Ambulance Service Board.  (Docket No. 9-2, ¶ 4.)  Ambulance Service employees are not employees of Lyon County, and Lyon County does not handle the payroll or keep employee records for Ambulance Service employees.  (Docket No. 9-4, ¶ 3.)  Furthermore, Kentucky statutory law expressly vests the Ambulance Service Board— not the Fiscal Court, county, or other governmental unit—with the authority to contract, employ personnel, and compensate employees.  *See* Ky. Rev. Stat § 108.140.

Additionally, although Watts alleges he entered into an employment contract with the Ambulance Service on September 9, 2009, (Docket No. 19, ¶ 10.), Ambulance Service Board minutes reflect that the Ambulance Service did not vote to hire Watts as director until its February 11, 2010, regular meeting, some five months later (*see* Docket No. 9-5, at 1 ("Steve Gilland moved the board hire Kenneth Watts as the Director of Lyon County EMS.  John Sims seconded and the motion passed.").)  Watts' assertion that the Fiscal Court approved his contract of employment is undercut by Fiscal Court minutes from February 9 and March 11, 2010, which make no reference to Watts or indicate that approval for his employment was either sought from, or given by, the Fiscal Court.  (*See* Docket Nos. 9-6; 9-7.)  In light of the evidence offered by the Fiscal Court, Watts may not rest upon the mere allegations of his pleadings, "but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009).  He has not done so here.

In short, Watts' Amended Complaint states no specific act or conduct on the part of either the Fiscal Court or its members beyond broad, conclusory, and speculative generalizations, which the Fiscal Court has produced evidence to refute.  The fact that Watts did not directly respond to either the Fiscal Court's original or refiled Motion to Dismiss underscores the Court's conclusion that no genuine factual dispute exists and that summary judgment is appropriate on all of Watts' claims against the Fiscal Court.

Accordingly, the Fiscal Court's Motion to Dismiss, (Docket No. 20), which the Court treats as a motion for summary judgment, is GRANTED and all claims against the Lyon County Fiscal Court, Judge Executive Wade White, and Lyon County Magistrates Charles Ferguson, Buddy L. Nichols, and Steve Cruce DISMISSED.

## II.     Claims Against the Ambulance Service Defendants

### A.     Title VII Claim(s)

In Count 1 of his Amended Complaint, Watts alleges violations of Title VII. (Docket No. 19, at 5-6.)  Specifically, Watts alleges he "is a member of a protected class by reason of his gender and was subjected to unwelcome harassment because of his gender, in that the Ambulance Service discharged, and/or created a hostile work environment in violation of 42 U.S.C. § 2000e-2(a)(1) by terminating him because of false accusations of sexual harassment." (Docket No. 19, at 5-6.)  Watts further alleges the Ambulance Service knew of that harassment but failed to take corrective action by thoroughly and adequately investigating those sexual harassment claims against him, which also created a hostile work environment.  (Docket No. 19, at 6.)  Though not perfectly clear from the face of his Amended Complaint, based on the facts pleaded the Court reads Count 1 as alleging two separate Title VII claims: hostile work environment

and sex discrimination.

### 1.        Hostile work environment

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."   42 U.S.C. § 2000e-2(a)(1).  A plaintiff may establish a Title VII violation by proving that the discrimination based on sex created a hostile work environment.  *See Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999) (citing, *e.g.*, *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66 (1986)).  This form of discrimination occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Id.* (alteration in original) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  "But conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview."  *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 717 (6th Cir. 2012) (internal quotation marks omitted) (quoting *Harris*, 510 U.S. at 21).   To establish a prima facie case of discrimination based on hostile work environment, a plaintiff must demonstrate that (1) he is a member of a protected class; (2) he was subjected to harassment, either through words or actions, based on his sex; (3) the harassment had the effect of unreasonably interfering with his work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the employer.  *E.g.*, *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th

Cir. 2009); *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008).

Certainly, Title VII's protections against hostile work environments extend not only to females but also to males, such as Watts.   *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998).   As to the second element, Watts asserts that "[w]hen the defendants agreed to concoct allegations of sexual harassment *against* Watts, they subjected him to unwelcome harassment," and "[b]ut for the fact that he was a male, the defendants would not have contacted a former female employee to fabricate these charges."  (Docket No. 6, at 3 (emphasis in original).)  Watts further alleges that the Ambulance Service "knew of this harassment but failed to promptly take corrective action by thoroughly and adequately investigating the false claims levied by Sara Mink-Taylor, thereby creating a hostile work environment."  (Docket No. 19, at 6.)

The Court has substantial doubt whether Watts' allegations are sufficient to state a Title VII claim for discrimination based on hostile work environment.  However, in construing the facts in the light most favorable to Watts and accepting the allegations in his Amended Complaint as true, the Court is hesitant to dismiss Watts' claim at this juncture; rather, despite considerable pause, the Court feels that additional discovery is warranted to flesh out the merits of his allegations.  Accordingly, though not without hesitation, the Court will DENY the Ambulance Service's Motion to Dismiss Watts' Title VII hostile work environment claim at this time.

### 2.      Sex discrimination

The remainder of Count 1 seems to allege that the Ambulance Service discriminated against Watts by terminating him, based on false accusations of sexual harassment, because of his gender.  (*See* Docket No. 19, at 5-6.)  To establish a prima

facie case of sex discrimination under Title VII, a plaintiff must show (1) he is a member of a protected class; (2) he was qualified for the job; (3) he experienced an adverse employment action; and (4) he was replaced by someone outside of the protected class. *E.g.*, *Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 568 (6th Cir. 2009); *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008). However, because Watts is male, the first and fourth prongs are modified under the so-called "reverse-sex discrimination" scheme. To satisfy the modified first prong, Watts must "demonstrate background circumstances to support the suspicion" that the Ambulance Service "is that unusual employer who discriminates against the majority." *Simpson*, 359 F. App'x at 569 (alteration omitted) (quoting *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003)). And to satisfy the modified fourth prong, Watts must show that the Ambulance Service replaced him with someone not a member of the protected class. *Id.* (citing *Sutherland*, 344 F.3d at 614; *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002)).

Again, the Court has substantial doubt whether Watts' allegations state a viable claim of sex discrimination under Title VII. But, for the same reasons stated above in relation to his hostile work environment claim, the Court feels that some discovery is warranted to flesh out the merits of Watts' allegations. Accordingly, the Court will DENY the Ambulance Service's Motion to Dismiss Watts' Title VII sex discrimination claim at this time.

### B.       False Claims Act

In Count 2 of his Amended Complaint, Watts alleges unlawful discharge in violation of the False Claims Act (FCA), 31 U.S.C. § 3729-3730. (Docket No. 19, at 6-

7.)  Specifically, he states that at a May 9, 2011, meeting, he was instructed by Ambulance Service Board members to reclassify charges for ambulance runs to reflect that the Ambulance Service had provided more advanced levels of care than were actually provided.  (Docket No. 19, at 6.)  Watts alleges he refused that instruction and made his refusal known to the Board members.  (Docket No. 19, at 6.)  According to Watts, had he submitted the charges as instructed by the Board, Medicare would have been overcharged insofar as the Ambulance Service would have been reimbursed for services that were either not provided or unnecessary.  (Docket No. 19, at 6.)  Watts maintains that because he refused to reclassify the runs, the Ambulance Service terminated his employment.  (Docket No. 19, at 7.)

"The FCA protects 'whistleblowers' who pursue or investigate or otherwise contribute to a *qui tam* action, exposing fraud against the United States government." *McKenzie v. Bellsouth Telecommc'ns, Inc.*, 219 F.3d 508, 513.  The FCA provides, in relevant part:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1).  To establish a prima facie case of retaliation under § 3730(h), a plaintiff must show: (1) he is engaged in a protected activity; (2) his employer knew he was engaged in the protected activity; and (3) his employer took adverse action against him as a result of the protected activity.  *E.g.*, *McKenzie*, 219 F.3d at 514; *Boegh*

*v. Energy Solutions, Inc.*, 2012 WL 1576158, at *5 (W.D. Ky. May 3, 2012).  "Protected activity" is defined as "that activity which reasonably could lead to a viable FCA action."  *McKenzie*, 219 F.3d at 516.  A plaintiff need not show actual fraud; it is possible for him to engage in protected activity related to a viable FCA claim even if the alleged wrongdoer is innocent.  *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 416 & n.1 (2005); *Dilback v. Gen. Elec. Co.*, 2008 WL 4372901, at *3 (W.D. Ky. Sept. 22, 2008).  Still, the law of this Circuit requires that "the 'protected activity' must relate to 'exposing fraud' or 'involvement with a false claims disclosure.'"  *McKenzie*, 219 F.3d at 516; *Dilback*, 2008 WL 4372901.  To that end, the Sixth Circuit has interpreted § 3730(h)'s "in furtherance of an action" language to "require[] more than merely reporting wrongdoing to supervisors."  *Id.* at 517.  Merely urging compliance is similarly not enough.  *See id.* at 516.

In *McKenzie v. Bellsouth Telecommc'ns, Inc.*, the Sixth Circuit, surveying the then-existing "protected activity" caselaw around the country, held that an FCA plaintiff's "repeated refusals to falsify [claims] and numerous complaints to her supervisors are not sufficiently connected to exposing fraud or false claims against the federal government" to qualify as protected activity.  *Id.* at 517.  Applying a decision by the D.C. Circuit, the Sixth Circuit acknowledged, though, that the "in furtherance of" requirement could be met where a plaintiff "investigated fraud outside the scope of his employment and was not merely urging compliance with regulations but detailing fraudulent practices."  *Id.* at 516 (applying *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 744 (D.C. Cir. 1998)).

More recently, in *Blackburn v. HQM of Riverview Health Care Ctr.*, this Court addressed whether a plaintiff sufficiently pleaded the "protected activity" requirement in the context of a Rule 12(b)(6) motion to dismiss.  *See* 2010 WL 5393848, at *2-3 (W.D. Ky. Dec. 22, 2010).   In *Blackburn*, this Court held that a plaintiff's alleged refusal to lie to state inspectors after being instructed to by her supervisor did not constitute protected activity under the FCA.  *Id.* at *3.  Specifically, the plaintiff in that case alleged she was called into her supervisor's office and warned that, if questioned, she should report to state inspectors that the facility's staffing was adequate; she refused, however, and truthfully discussed her employer's regulatory violations with the inspectors.  *Id.* at *2-3.  She alleged that because she challenged her employer's illegal practices and refused to lie she was terminated.  *Id.* at *2.  This Court reasoned that these allegations, as pleaded, did not constitute "protected activity" because the plaintiff's one-time verbal challenge to her employer's alleged unlawful conduct satisfied neither *McKenzie* nor this Circuit's interpretation of § 3730(h)'s "in furtherance of" language. *Id.* at *3.

The facts alleged in Watts' Amended Complaint are remarkably analogous to those alleged in *Blackburn*.  In effect, Watts states: (1) he was instructed to reclassify charges, which he alleges would have unlawfully overcharged Medicare; (2) he refused and made his refusal known to the Ambulance Service Board; and (3) he was terminated for refusing to reclassify those charges as he had been instructed.  (Docket No. 19, at 6-7.)  The allegation that he was instructed, but refused, to reclassify charges is based on a single event.  He does not allege that he submitted any report or other communication to the Ambulance Service alleging fraud on the government.  *See*

*McKenzie*, 219 F.3d at 516 ("[I]nternal reporting may constitute protected activity, [but] the internal reports must allege fraud on the government."). He does not allege that he conducted any investigation, either within or outside the scope of his employment, or that he detailed any fraudulent practices. *See id.* (acknowledging plaintiff who "investigated fraud outside the scope of his employment [and] detail[ed] fraudulent practices" was engaged in protected activity); *Yesudian*, 153 F.3d at 744 (same). Watts does not allege he has taken any action in furtherance of a *qui tam* action under the FCA. *See McKenzie*, 219 F.3d at 516 (suggesting that whether a plaintiff has taken action in furtherance of a *qui tam* action is a relevant consideration for satisfying the FCA's "in furtherance of" requirement). He does not allege that when he refused the Ambulance Service's instructions, legal action was either a reasonable or distinct possibility. *See McKenzie*, 153 F.3d at 516 (suggesting whether legal action under the FCA is "a reasonable and distinct possibility" is a relevant consideration for satisfying the "in furtherance of" requirement); *Smith v. C.R. Bard, Inc.*, 730 F. Supp. 2d 783, 802 (M.D. Tenn. 2010) (same); *Blackburn*, 2010 WL 5393848, at *3 (same). Moreover, he does not even allege that any fraud on the government actually occurred either before or after the May 9 meeting. Therefore, even assuming Watts has pleaded sufficiently the second and third elements for his FCA claim, he has not pleaded sufficient facts to show that he was engaged in protected activity and, thus, to state a viable claim for relief under the FCA.

For these reasons, the Court concludes Watts has failed to plead factual allegations sufficient to maintain his FCA claim for retaliation and, therefore, dismissal

is appropriate.  Accordingly, the Court will GRANT the Ambulance Service's Motion to Dismiss as to Watts' FCA claim.

**C.    HIPAA Claim; Discharge in Violation of 45 C.F.R. § 160.316**[7]

In Count 8 of his Amended Complaint, Watts claims he "was discharged and/or subjected to a hostile work environment in violation of 45 C.F.R. [§] 160.316 in that he was terminated, and/or because he was subjected to a hostile work environment, because of lawful acts done by him in an effort to stop one or more violations of HIPAA."  (Docket No. 19, at 11.)  Specifically, he alleges that on or before May 9, 2011, protected health information contained in the Ambulance Service's medical records was disclosed "without patient authorization, when it was faxed to Board member Denney via a publicly accessible fax machine at her place of employment." (Docket No. 19, at 11.)  He further alleges that same protected health information was discussed at the Board's open meeting over his objection that the information was private and should not be disclosed.  (Docket No. 19, at 11.)  Section 160.316 states, in relevant part:

> A covered entity may not threaten, intimidate, coerce, harass, discriminate against, or take any other retaliatory action against any individual or other person for--
>
> . . . .
>
> (c) Opposing any act or practice made unlawful by this subchapter, provided the individual or person has a good faith belief that the practice opposed is unlawful, and the manner of opposition is reasonable and does not involve a disclosure of

---

[7] In his original Complaint, Watts refers to 45 C.F.R. § 160.320, which does not appear to exist.  (Docket No. 1, at 9-10.)  Despite the Ambulance Service pointing out that Watts apparently meant to refer to section 160.316, (Docket No. 5, at 19 n.2), Watts continues to assert he "was terminated in violation of 45 C.F.R. Part 160.320" in his Amended Complaint, (Docket No. 19, at 11).  Regardless, it appears 45 C.F.R. § 160.316 is the correct regulation to which Watts refers.

> protected health information in violation of subpart E of part 164
> of this subchapter.

According to Watts, "the plain language" of this regulation "provides [him] with a cause of action for his unlawful termination following the May 9 disclosure of HIPAA-protected patient health information" by the Ambulance Service Board.  (Docket No. 22, at 3.)

HIPAA, the Health Insurance Portability and Accountability Act, is designed to protect personal medical information by limiting its disclosure and provides for both criminal and civil penalties for violating its requirements.  *See* 42 U.S.C. § 1320d-5, -6.  HIPAA expressly provides that the Secretary of Health and Human Services shall have the authority to enforce its provisions.  § 1320d-5.  This Court and other courts have consistently held there is no private right of action under HIPAA.  *E.g.*, *Holland v. Aegon U.S. Corp.*, 2008 WL 2742768, at *3 (W.D. Ky. July 14, 2008); *Smith v. Smith*, 2007 WL 2332394, at *2 (E.D. Ky. Aug. 13, 2007); *Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006); *Logan v. Dep't of Veterans Affairs*, 357 F. Supp. 2d 149, 155 (D.D.C. 2004); *Univ. of Colo. Hosp. v. Denver Pub. Co.*, 340 F. Supp. 2d 1142, 1145 (D. Colo. 2004).  The mere fact that a federal statute or regulation has been violated and someone harmed "does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979).  Generally, for an individual to have a right to sue to enforce a federal statute, Congress must expressly authorize a private cause of action.  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  Congress did not do so in HIPAA; therefore, the terms of the statute do not provide Watts a cause of action under either HIPAA or its regulations based on an alleged violation.

Accordingly, Watts' assertion that 45 C.F.R. § 160.316 somehow creates a private cause of action for his unlawful/retaliatory termination claim is without merit. Because Watts has no private cause of action under that regulation (or under HIPAA), the Court will GRANT the Ambulance Service's Motion to Dismiss this claim, and this claim shall be dismissed with prejudice.

### D.        Remaining State Causes of Action

The Court has found that the Ambulance Service is entitled to dismissal of Counts 2 and 8 of Watts' Amended Complaint. *See supra* Parts II.B–C. The Court has expressed doubt whether Watts can maintain his claims in Count 1 but, with some hesitation, denied the Ambulance Service's Motion to Dismiss those claims. *See supra* Part II.A. In doing so, Watts is left with only one cause of action giving rise to the Court's federal question jurisdiction—his Count 1 claims under Title VII. Watts' five state law claims remain: Count 3, violations of the Kentucky Civil Rights Act; Count 4, breach of contract; Count 5, slander; Count 6, civil conspiracy; and Count 7, tortious interference with a contract.

Under 28 U.S.C. § 1367(c), a district court may decline jurisdiction where it has dismissed the claims giving rise to federal question jurisdiction. As stated above, this Circuit's precedent instructs that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Landefeld*, 994 F.2d at 1182 (quoting *Taylor*, 973 F.2d at 1287). Because the Court finds that the proof which would be taken in discovery in regard to Watts' remaining Title VII and state law claims will be substantially the same, the Court will DENY the Ambulance Service's Motion to Dismiss Watts' remaining state law claims at this time, pending further discovery. In

doing so, the Court takes no position on the merits of Watts' state law claims at this time.  As expressed above, the Court is doubtful whether, as a matter of law, Watts can maintain his Title VII claims.  After further proof is taken and dispositive motions submitted regarding Watts' Title VII claims, the Court will then revisit the issue whether to decline supplemental jurisdiction, pursuant to § 1367(c)(3), over Watts' remaining state law claims.

CONCLUSION AND ORDER

For these reasons, IT IS HEREBY ORDERED that:

(1) the Fiscal Court's Motion to Dismiss, (Docket No. 20), which the Court treats as a motion for summary judgment, is GRANTED, and all claims against the Lyon County Fiscal Court, Judge Executive Wade White, and Lyon County Magistrates Charles Ferguson, Buddy L. Nichols, and Steve Cruce are DISMISSED;

(2) the Ambulance Service's Motion to Dismiss, (Docket No. 21), is GRANTED IN PART and DENIED IN PART as follows:

   (a) the Ambulance Service's Motion is GRANTED as to Count 2 (False Claims Act claim) and Count 8 (HIPAA/45 C.F.R. § 160.316 claim), and those claims against the Lyon County Ambulance Service, Rod Murphy, Anthony Young, Steve Gilland, and Lilburn Ann Denney are DISMISSED;

   (b) the Ambulance Service's Motion is DENIED as to Count 1 (Title VII claims), and Counts 3 through 7 (state law claims);

The Court will enter an appropriate Scheduling Order setting a Rule 16 telephonic scheduling conference separately with this Opinion.

IT IS SO ORDERED.

Date:

cc:     Counsel